(33 App. Div. 62.)

A. S. HOLMES REFINING CO. v. UNITED REFINERS EXPORT OIL CO.

(Supreme Court, Appellate Division, Fourth Department.    July 26, 1898.)

CORPORATIONS—ORGANIZATION BY DEBTOR TO DEFRAUD CREDITOR—EVIDENCE.
   A person consigning oil to defendant under a contract terminable on six months' notice, having overdrawn his account with defendant, formed a corporation under his own name, taking practically all of the stock himself, and continued in business without any material change, the only notice that defendant received being a change in the billheads made by a rubber stamp. On learning the facts, defendant refused to open an account with the corporation until said person's account had been settled, and a new contract entered into.    *Held*, in an action for oil furnished by the corporation before defendant was notified of the change, that the question was for the jury whether defendant had a right to assume that the oil was furnished under the old contract, to be applied on said person's account, and that said person and the corporation were one and the same, and that the formation of the corporation was intended as a fraud on defendant.

Action by the A. S. Holmes Refining Company against the United Refiners Export Oil Company.    There was a verdict for plaintiff, and defendant's exceptions were ordered to be heard in the appellate division in the first instance.    Exceptions sustained.

This action was commenced in Erie county, May 13, 1893, to recover $1,-079.23, with interest thereon from March 6, 1893, for a quantity of export oil shipped and delivered by the plaintiff to the defendant during the first five days of the month of November, 1892.    The complaint alleged that the plaintiff was a corporation created under the laws of the state of New York. The defendant answered, denying the incorporation of the plaintiff, and alleged that the plaintiff's name was one under which A. S. Holmes conducted business; denied that the plaintiff had shipped the oil in controversy; alleged a written contract with A. S. Holmes, dated March 31, 1891, under which the oil was shipped; alleged that the defendant had permitted A. S. Holmes to overdraw his account in the business to the extent of $3,122.33, and that between the 28th day of October, 1892, and the 5th day of November of that year, the said Holmes had consigned to the defendant, under the contract, and not otherwise, oil to the net value of $2,153.97, which sum the defendant had credited Holmes upon his said indebtedness, leaving a balance of $968.36 due the defendant.    The answer further alleged that, the said A. S. Holmes being

53 N.Y.S.—6

indebted largely, and in failing circumstances, and with intent to hinder, delay, and defraud his creditors, made or caused to be made or created a corporation under the name of the plaintiff; that the pretended capital stock of the concern was $300,000, all of which, except 10 shares of $100 each, said Holmes agreed to take; that no capital was paid into said pretended corporation; and said corporation had taken possession of the property owned by Holmes with intent to hinder, delay, and defraud the creditors, particularly this defendant, and to prevent the defendant from collecting from said Holmes the amount so owing to it from said overdrafts. The trial occurred on the 14th day of May, 1897, and upon the close of the evidence the court directed a verdict for the plaintiff in the sum of $1,350.23, to which the defendant's counsel duly excepted, and the court ordered the defendant's exceptions to be heard in the appellate division in the first instance, and in the meantime that the judgment be suspended.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

George A. Lewis, for plaintiff.
James Parker Hall, for defendant.

WARD, J. Upon the trial the defendant admitted "that in the first five days in the month of November, 1892, it received oil, sold the same, and, after deducting commissions and all charges due it, had in its hands the sum of $1,079.23 subject to the order of whom it should concern; that the shipment was made from the Holmes Refining Company in Buffalo." It further appeared: That the A. S. Holmes Refining Company took charge of the factory and business of A. S. Holmes October 10, 1892. That before that time it had been conducted by A. S. Holmes. The same treasurer and bookkeeper were retained by the company as had been employed by Holmes. The accounts of the company were kept in the same manner and upon the same books that A. S. Holmes had used, and the bookkeeper could not tell from any entry on the books "where Holmes left off and the refinery company commenced." A. S. Holmes became the president of the company, and had charge of the business after October, 1892, the same as before; and the business was conducted in about the same way. The certificate of the incorporation of the plaintiff was filed October 3, 1892. The oil, after October 10th, was shipped in the name of the "A. S. Holmes Refining Company." There was a rubber stamp used on the billheads of A. S. Holmes, marking thereon "A. S. Holmes Refining Company." The business between the defendant and A. S. Holmes originated in a written contract dated March 31, 1891, whereby the defendant undertook to erect without delay at Perth Amboy, N. J., tankage for 50,000 barrels of oil, with pipe connections and pumps, and to erect a dock to load steamers employed in the oil trade, etc. Holmes agreed to ship export oil to the defendant at that place. The defendant is a New Jersey corporation, transacting business in New Jersey and in New York City. The contract provided for commissions, and contained many important and complicated provisions under which the business was to be carried on, among which was one that the oil should be inspected, and that Holmes might draw upon the defendant for the oil shipped, not to exceed 90 per cent. of the value of the oil, to be accepted and paid by the defendant. The contract was

made binding upon the heirs, executors, and assigns of the parties, and to continue in operation for five years unless terminated by a six-months notice of withdrawal from the contract, which could be done at any time after two years from the date of the contract. After the incorporation of the plaintiff, and before the 1st day of November, 1892, a large amount of oil was consigned to the defendant, and, as we understand the evidence, in the plaintiff's name, and in that name drafts were drawn upon the defendant upon the shipments of oil which exceeded the value of the oil upon which they were drawn in the sum of about $3,700. The amount of these overdrafts was received by the plaintiff. A controversy arose between the parties in regard to these overdrafts. Correspondence and telegrams ensued between the defendant and A. S. Holmes. Some of those letters and telegrams were signed. "A. S. Holmes"; others, "A. S. Holmes Refining Company"; and some of the communications of the defendant were addressed to "A. S. Holmes" and some to "A. S. Holmes Refining Company." Other drafts had been drawn upon the oil shipped prior to November 1, 1892, which the defendant did not honor, and which the defendant finally refused to honor; the final refusal being in a telegram of November 1, 1892, from the defendant to A. S. Holmes, in this language: "We refuse your further drafts until balance against you has been absorbed."

After the refusal of the defendant to honor the drafts the following correspondence occurred between the parties:

Exhibit A.

A. S. Holmes Refining Company, Successors to A. S. Holmes Oil Refinery.

"Buffalo, October 31, 1892.

"United Refiners Export Oil Co., 23 Beaver Street, N. Y.—Dear Sir: Mr. Holmes turned over his refining interests to us the morning of the 10th inst. Please send us a statement of our account from that date.

"Yours truly,                    A. S. Holmes Refining Co.,
                              "By C. P. Stevenson, Treasurer."

[Note: "A. S. Holmes Refining Company, Successor to" is stamped in red with a rubber stamp over the printed heading "A. S. Holmes Oil Refinery."

Exhibit No. 17.

"New York, November 1, 1892.

"A. S. Holmes Refining Co., Buffalo, N. Y.—Gentlemen: I am in receipt of yours of October 31, asking us to send account to A. S. Holmes Refining Company from and after date of October 10th. As this is the first notification we have had from you of the change of business, we can only state that up to this time no account has been kept with the A. S. Holmes Refining Company. We note that your company are the successors of A. S. Holmes, and will have statement of his account made, and, after settlement, will open an account in your name if desired. [Signed by the president of the defendant.]"

Plaintiff's Exhibit B.

"A. S. Holmes Refining Co., Successors to A. S. Holmes, Refiner of Petroleum.

"Buffalo, N. Y., 11/3/92.

"United Refiners Export Oil Co., 23 Beaver Street, N. Y.—Dear Sir: Kindly open account with us, beginning November first, and putting through such account all consignments which may be invoiced on our billheads to include oil you receive on and after the first. Any invoice made on Mr. A. S. Holmes' own billheads to go through his account. Any drafts for our accounts will be signed as below, and, if you will advise us as to the proper time to send

drafts forward with B. L. attached, will follow instructions. Hoping that this will be satisfactory to you, we are, very truly yours,

"A. S. Holmes Refining Co.,
"By C. P. Stevenson, Treasurer."

To which the defendant replied:

Exhibit 24.

"New York, November 4, 1892.

"A. S. Holmes Refining Co., Buffalo, N. Y.—Gentlemen: We are in receipt of your letter of the third inst., asking us to open account with you beginning November first. Before doing so, it would be necessary for us to have your written acceptance of the contract made March 31, 1891, with Mr. A. S. Holmes, and your agreement to become a party thereto in his stead; or if, as we infer from your letter, Mr. A. S. Holmes proposes to ship us his oil for his account, we would require you to enter into a contract of a similar nature. We also require a settlement of the balance due of A. S. Holmes before opening up a new account as his successors."

The defendant kept the account of the oil shipped on the 1st, 3d, 4th, and 5th days of November, 1892, on its books in the name of "A. S. Holmes." A. S. Holmes held $290,000 of the $300,000 stock of the plaintiff. A witness by the name of Johnson testified that his name was mentioned in the certificate of the plaintiff corporation, but that no stock was issued to him, and that he signed the application for the incorporation at the request of Holmes. The president of the defendant testified, in an answer to the question as to how he came to address a letter to the "A. S. Holmes Refining Company," as follows: "A. We believed that they were one and the same concern,—A. S. Holmes and the A. S. Holmes Refining Company." No contract, written or otherwise, had been made between the plaintiff and the defendant, but there was proof upon which the jury might have found that until the defendant's refusal to pay Holmes' overdrafts it had no notice of the incorporation of the plaintiff; that the overdrafts had all occurred after the plaintiff had become incorporated, upon oil which had been consigned to the defendant by it under the contract made with A. S. Holmes; that when Mr. A. S. Holmes, the president of the plaintiff, discovered that the overdrafts were not to be honored, the position for the first time was taken that the defendant was dealing with a party other than A. S. Holmes, and that the defendant must account to that party for the oil shipped in November, 1892, without a settlement of the balance due upon the Holmes contract for the overdrafts. Had the plaintiff, in fairness and justice to the defendant, upon its incorporation given it full notice of such incorporation, that it did not recognize the obligations of the Holmes contract, that it was prepared to make a new contract and to open a new account, it is probable that the overdrafts made after the incorporation of the plaintiff would not have been paid. The defendant would have understood its exact legal relations to the case. But simply changing the name of "A. S. Holmes" to that of "A. S. Holmes Refining Company" upon its letter heads and bills, and in all other respects continuing the business under the contract with Holmes, was not a sufficient notice of the corporate existence of the plaintiff. Simply changing a name in doing business, without explanation to the other party,

and continuing to transact the business the same as before the change, may well lead to the supposition that the change was in name only, and the contract was to be fulfilled as stipulated by the original parties. The evidence leads to the suspicion, if not the belief, that A. S. Holmes was the controlling spirit with the plaintiff; that he did not intend to pay his debt to the defendant; that when he found he could get no more money on the overdrafts he resorted to the expedient of claiming that the corporation had abrogated the contract, so that he might recover for the oil sent in November, discharged of his obligations to the defendant. Holmes was not a witness upon the trial. He seemed to have disappeared from the scene of his former operations.

At the close of the evidence the defendant's counsel asked to go to the jury "on the question as to whether, under the evidence, the defendant had a right to assume that when the oil was shipped—this oil in question—it was for the purpose of taking up A. S. Holmes' account, and on the question that the formation of the corporation and the continuance of the business as testified to, with Holmes as president and in charge, and owning the greater part of it, would be a fraud on the defendant under the circumstances; and the further question that under the evidence the defendant had a right to assume, so far as its relation with Holmes and the refining company were concerned, that they were both one and the same; and upon all the evidence we have the right to go to the jury." The learned trial court concluded to submit the serious legal questions involved in this case to our consideration, where greater deliberation may be had than is afforded at the trial.

It was a question for the jury whether at any time the minds of the parties to this action met upon any new contract or arrangement different from the contract with Holmes. A new contract could not be made whereby the defendant assumed to deal with the plaintiff corporation, unless the defendant had knowledge of and assented to it. In Ice Co. v. Potter, 123 Mass. 28, P., becoming dissatisfied, ceased to take ice of an old company, and contracted for ice with a new one. The old one afterwards bought the new one's business, without notifying P. thereof until after the delivery and consumption of the ice. Held, that the old company could not maintain an action for the price against P., it having no privity of contract with him. In Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 387, 8 Sup. Ct. 1309, Mr. Justice Gray, in speaking for the supreme court of the United States, said:

"Every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman, 'You have the right to the benefit you anticipate from the character, credit, and substance of the party with whom you contract.'"

The plaintiff was distinctly notified by the defendant's letter of November 1, 1892, that it would open no new account with the plaintiff, as successor of Holmes, until after settlement of the Holmes account, so that the oil, the price of which is sought to be recovered in this action, that was delivered after the receipt of that letter,

having been delivered in the face of this notification, the jury might have inferred that the oil was shipped and received upon the condition that the Holmes account was to be settled. The defendant's letter of November 4, 1892, in which the defendant declined to open a new account until the plaintiff had given a written acceptance of the Holmes agreement, and paid the overdraft, was important evidence to be considered by the jury upon the same subject.

The defendant's answer alleged that the incorporation of the plaintiff was a fraudulent contrivance to cheat the defendant and other creditors. There is evidence in the case which a jury might say tended to sustain that conclusion. We think the trial court erred in not submitting to the jury the question that the defendant's counsel requested the court to submit, and substantially as requested, or at least such questions as we have discussed, as appropriate for the consideration of the jury.

The defendant's exceptions should be sustained, and a new trial ordered, with costs to the defendant to abide the event. All concur.